Chief Justice Suttell,
dissenting.
Although I concurred with the Court’s affirmance of the Superior Court judgment vacating Raymond Tempest, Jr.’s conviction, I did so for reasons other than those relied upon by the majority. For the reasons set forth in my separate opinion, I believe that the Superior Court justice’s decision to vacate the conviction based upon the state’s failure to disclose the pretrial statements of Donna Carrier was predicated upon an incomplete analysis under the doctrine set forth in Brady v. Maryland, 373 U.S. 83 (1963) and Lerner v. Moran, 542 A.2d 1089 (R.I. 1988). See Tempest v. State, 141 A.3d 677, 687-88 (R.I. 2016) (Suttell, C.J., concurring in the result and dissenting in part).
As neither the hearing justice nor the majority concluded that the prosecution’s failure to disclose the statements was for the purpose of obstruction, the Court’s opinion seemingly stands for the proposition that a defendant need show only “a considered decision to suppress” to be entitled to a new trial. See State v. Wyche, 518 A.2d 907, 910 (R.I. 1986). This is a departure from our long-standing jurisprudence and should be revisited. See id. (“The prosecution acts deliberately when it makes ‘a considered decision to suppress * ⅜ * for the very purpose of obstructing1 or where it fails ‘to disclose evidence whose high value to the defense could not have escaped * * * [its] attention.’ ”) (quoting United States v. Keogh, 391 F.2d 138, 146-47 (2nd Cir. 1968)).
The Court’s opinion also rests upon the second prong of the deliberate nondisclosure analysis, he., that the “high value” of the Carrier statements could not have escaped the prosecution’s attention. In doing so, the majority, I believe, has overlooked or misapprehended significant aspects of the record. Most fundamentally, the majority reached its conclusion notwithstanding the lack of any credibility determina *181 tions by the hearing justice with respect to the testimony of the former prosecutor. Indeed, the hearing justice, having found (erroneously in my view) the first prong to have been satisfied, never discussed the alternative high-value-of-the-evidence predicate.
The only statements in the hearing justice’s decision concerning this evidence that may fairly be considered factual rulings are: (1) that the former prosecutor’s note, “too late, don’t volunteer new info, will cause big problems,” constituted a considered decision to suppress; (2) that “the protean nature of Ms. Carrier’s testimony was * * * necessarily harmful to the [sjtate’s case”; and (3) that the former prosecutor “evidently sought to protect Ms. Carrier from additional impeachment.” The use of the word “evidently” certainly suggests that the hearing justice was not at all convinced of the high value of Carrier’s statements to the defense.
Be that as it may, the majority determined “that the ‘high value’ of Carrier’s new statements to the defense could not have escaped the former prosecutor’s attention * * Tempest, 141 A.3d at 688. This conclusion, in my judgment, overlooks the wealth of impeachment evidence that was in the defendant’s possession at the time of trial.
One of the statements at issue was Carrier’s assertion that, on the day of the murder, Tempest’s children were excited about getting a puppy. At the time of the trial, however, the defense was in possession of Carrier’s grand jury testimony that she had observed Tempest leave her apartment building on the day of the murder to pick up a puppy. Significantly, it was undisputed at the time of trial that Carrier was mistaken about what she had observed on the day of the murder as Tempest had not yet moved into her apartment building. When placed in proper context, therefore, I believe that the “high value” of Carrier’s statement concerning Tempest’s children’s excitement could easily have escaped the prosecution’s attention. See Lerner, 542 A.2d at 1092 (“Such [high value] cases rarely present a problem as to ‘the degree of prejudice which must be shown’; almost by definition the evidence is highly material.”) (quoting Keogh, 391 F.2d at 147).
The majority also reasoned that Carrier’s statement that Tempest’s brother, Gordon Tempest, hid the murder weapon in an effort to conceal it to protect his brother “certainly could have been used by the defense to undermine her already shaky credibility.” Tempest, 141 A.3d at 685. Thus, the majority concluded, the high value of her statement could not have escaped the prosecution’s attention. This conclusion, however, overlooks the great lengths Tempest went to at trial to exclude any evidence concerning his brother’s involvement in the concealment or “cover up” of the murder. As this Court wrote in Tempest’s direct appeal from conviction:
“The defendant next contends that the trial justice repeatedly erred by admitting evidence of an alleged ‘cover up’ of defendant’s involvement in the crime by certain members of the Woonsocket police department and defendant’s relatives. According to defendant, this evidence was never connected to him, was only ‘negligibly relevant,’ and as such was extremely and unfairly prejudicial to him.” State v. Tempest, 651 A.2d 1198, 1213 (R.I. 1995).
It can hardly be said that the high value of Carrier’s statement to the defense would have been readily apparent.
Accordingly, I would grant the state’s petition to reargue and urge the majority to reconsider the Brady claim relating to the maroon car as a basis for affirming the Superior Court judgment.